UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven F.V.Z.,

Petitioner,

v.

Todd Blanche, *in his official capacity as Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Joel Brott, *in his official capacity as Sheriff of Sherburne County*; and David J. Venturella, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*.

Respondents.

File No. 26-cv-2909 (ECT/SGE)

**OPINION AND ORDER**

Magistrate Judge Shannon G. Elkins issued a Report and Recommendation ("R&R") dated August 1, 2026. ECF No. 11. Judge Elkins recommended that Petitioner Steven F.V.Z.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] be granted insofar as the Respondents be required to provide him with a bond hearing. *See id.* at 8–9. Respondents[1] objected to the R&R, ECF No. 12, triggering de novo review of the objected-to portions of the R&R pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3).

[1] "Respondents" refers to Attorney General Blanche, Secretary Mullin, Acting Director Easterwood, and Acting Director Venturella. Sherburne County Sheriff Joel Brott has not appeared in these proceedings.

Steven is a citizen of Ecuador. Pet. ¶ 12. On or about January 18, 2023, Steven entered the United States as an unaccompanied minor aged 14. *Id.* ¶ 13; ECF No. 8-6 at 1. Steven was arrested by a border patrol officer at or near the Texas-Mexico border shortly after entry. Pet. ¶ 13; ECF No. 8-6 at 2–3. On February 5, 2023, he was released by the Office of Refugee Resettlement ("ORR") to the care of his mother. ECF No. 1-2. Steven has since resided and attended school in Columbia Heights, Minnesota. *See* Pet. ¶ 21; ECF No. 1-8 at 1.

On February 25, 2023, the Department of Homeland Security issued Steven a Notice to Appear, initiating removal proceedings. ECF No. 8-1. The Notice to Appear charged Steven as subject to removal pursuant to INA § 212(a)(6)(A)(i), classifying him as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* at 1. In 2024, Steven applied to the United States Citizenship and Immigration Services ("USCIS") for employment authorization, which was granted and valid from April 22, 2024, through April 21, 2029. ECF Nos. 1-6, 1-7. On September 10, 2024, Steven also applied for a derivative U visa through his father. Pet. ¶ 20; ECF No. 1-4. Steven claims USCIS determined his U visa petition was bona fide and granted him deferred action. *See* Pet. ¶ 20. Steven did not file any documents in support of either of these claims.[2] *See* Docket.

[2] Steven's Form I-213 from 2026 does indicate that on November 15, 2024, removal proceedings against Steven were "administratively closed by an Immigration Judge due to a pending U-Visa with USCIS." ECF No. 8-2 at 3. But this does not necessarily mean that USCIS deemed his U visa petition bona fide or granted him deferred action, especially

On May 12, 2026, Steven was arrested in Columbia Heights, Minnesota and charged with misdemeanor domestic assault under Minn. Stat. § 609.2242.1(2). *See* ECF No. 14-1 at 1. That same day, Immigration and Customs Enforcement and the Office of Enforcement and Removal Operations (together "ICE/ERO") issued a detainer to the Anoka County Jail, ECF No. 8-3, and a Form I-200 administrative warrant to arrest Steven pending removal proceedings, ECF No. 8-4.[3] On May 14, 2026, Steven was released from Anoka County Jail. Pet. ¶ 22; ECF No. 1-9. ICE/ERO arrested Steven immediately upon his release. Pet. ¶ 23; ECF No. 8-2 at 2.

Steven is presently detained at Sherburne County Jail. Pet. ¶ 25. Steven filed his Petition on June 10, 2026, asserting that his detention violates the Administrative Procedure Act ("APA"), *see id.* ¶¶ 87–96 (Count I), his right to procedural due process under the Fifth Amendment, *see id.* ¶¶ 97–108 (Count II), his right to substantive due process under the Fifth Amendment, *see id.* ¶¶ 109–15 (Count III), the Fourth Amendment, *see id.* ¶¶ 116–25 (Count IV), and, for purposes of preservation, the Immigration and Nationality Act ("INA"), *see id.* ¶¶ 126–28 (Count V). Steven seeks immediate release or a bond hearing held in district court. *See id.* at 44–47.

---

considering that it had only been two months since he submitted his U visa petition when the immigration judge administratively closed his removal proceedings.

[3] Steven's Form I-213 states that his fingerprints "were electronically submitted to the Department of Justice, National Crime Center/ Next Generation Identification System and Department of Homeland Security/ICE databases" after his May 12 arrest. ECF No. 8-2 at 2. And "[u]pon review, it was determined that [Steven was] amenable to ICE enforcement action," prompting ICE/ERO to issue the detainer and Form I-200 warrant. *Id.*

In the R&R, Judge Elkins concluded that Steven's continued detention without a bond hearing was unlawful and recommended the Petition be granted insofar as the Respondents be ordered to provide him with a bond hearing. *See* ECF No. 11 at 8–9. Specifically, Judge Elkins determined that, while the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) forecloses Steven's statutory entitlement to a bond hearing because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), the Due Process Clause of the Fifth Amendment still requires Respondents to provide him with a bond hearing under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See id.* at 3 n.2, 4, 8. Respondents objected to the R&R, arguing that *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) forecloses Steven's entitlement to a bond hearing on due process grounds. *See* ECF No. 12. Steven also objected to the R&R, arguing that the appropriate remedy here is release, ECF No. 13 at 5, or a bond hearing conducted in district court where "the government would have the burden of proving, by clear and convincing evidence, that Steven must remain in custody," *id.* at 6.

Reviewing the objected-to R&R de novo, I respectfully disagree with Judge Elkins. Where, as here, "a petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)" pending deportation proceedings, I conclude that "*Baynee* and *Demore* are controlling." *Eliseo C. v. Blanche*, No. 26-cv-2282 (ECT/SGE), slip op. at 8 (D. Minn. June 29, 2026), ECF No. 12. Specifically:

> In *Banyee v. Garland*, the Eighth Circuit, relying on *Demore v. Kim*, 538 U.S. 510 (2003), determined that "detention during deportation proceedings is constitutionally valid." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (citation modified) (quoting *Demore*, 538 U.S. at 523). *Banyee* further clarified

> that individualized findings and interest balancing are not necessary; as the court explained, "*Zadvydas* and *Demore* have already done whatever balancing is necessary." *Id.* at 933. In *Demore*, the Supreme Court "opted for a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Id.* at 933 (quoting *Demore*, 538 U.S. at 527). In *Banyee*, it did not matter that the petitioner had spent a year in custody awaiting a removal decision. *Id.* at 930, 932. Instead, "what matters is that detention pending deportation 'has a definite termination point'—deporting or releasing the alien—making it 'materially different' from the 'potentially permanent' confinement authorized by other statutes." *Id.* at 932 (citation modified) (quoting *Demore*, 538 U.S. at 528–29). The Eighth Circuit determined that for due process purposes, "[t]he *why*" is "more important than *how long*." *Id.*

*Eliseo C.*, slip op. at 7. Removal proceedings against Steven have been pending since his Notice to Appear was issued on February 25, 2023. *See* ECF No. 8-1 at 1. Because mandatory detention without a bond hearing is acceptable "for as long as deportation proceedings are still pending," *Banyee*, 115 F.4th at 933 (citation modified), Steven's due process claim fails.

In his response to Respondents' objection to the R&R, Steven argues that *Banyee* does not foreclose his due process claim because it only dealt with mandatory detention under 8 U.S.C. § 1226(c), not § 1225(b)(2). *See* ECF No. 16 at 1–2 ("*Banyee* does not address the reason the petitioner was detained in the first place."). But both are mandatory detention schemes, and *Banyee* does not indicate that its reasoning might be limited to noncitizens detained pursuant to § 1226(c). In the end, what made the petitioner's detention in *Banyee* constitutionally valid was that his "detention pending deportation

'ha[d] a definite termination point'—deporting or releasing the alien." *Banyee*, 115 F.4th at 932 (citation modified) (quoting *Demore*, 538 U.S. at 529). Steven's case is no different.

Because Judge Elkins recommended granting Steven's petition on due process grounds under *Mathews v. Eldridge*, she did not reach Steven's other due process arguments, which are worth addressing here. For instance, Steven argues that, because Respondents' I-200 warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations," his due process claim should be evaluated "under the discretionary detention framework set forth in § 1226." ECF No. 9 at 7. However, that language does nothing more than "identif[y] which officers are authorized to conduct the arrest." *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). It does not indicate that the arrest occurred pursuant to § 1226.

Steven also argues that "Respondents violated procedural due process by re-detaining Steven, after his 2023 release by ORR, without adequate procedural protections before deprivation of his liberty." Pet. ¶ 107; *see also* ECF No. 9 at 8–10. Specifically, Steven argues that "[w]hen the ORR released Steven" in 2023 it "necessarily" determined he was not a flight risk or a danger to himself or others, ECF No. 9 at 8–9 (citing 6 U.S.C. § 279(b)(2)), so re-detaining him now requires a showing of changed circumstances, *see id.* at 11–12. Respondents' position is that "[i]ndividualized findings about flight risk and danger are irrelevant under the terms of § 1225(b)(2)(A)." ECF No. 7 at 10. The primary issue with Steven's argument is that he hasn't explained how it squares with Eighth Circuit

precedent, namely, *Avila* and *Banyee*. As I read *Banyee*, a noncitizen subject to mandatory detention such as Steven is not entitled to further individualized findings as long as deportation proceedings are pending. *See Banyee*, 115 F.4th at 933. Steven has not explained how the cases he cites in support of his re-detention argument apply given this precedent. *See* Pet. ¶¶ 80, 107; ECF No. 9 at 9–12; ECF No. 16 at 1–2.

Judge Elkins did not reach the other claims in Steven's Petition, but those claims do not save his Petition either. As to his APA claim, Steven argues he is entitled to relief because he is a member of the class certified in *Immigration Center for Women & Children v. Noem* (*ICWC*), 351 F.R.D. 324 (C.D. Cal. 2026). *See* Pet. ¶¶ 87–96. The *ICWC* court preliminarily stayed ICE's "De Facto Revocation Policy, under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas." *ICWC*, 351 F.R.D. at 397. Steven argues that his detention is in contravention of the *ICWC* court's stay and therefore constitutes agency action "not in accordance with law" under 5 U.S.C. § 706(2)(A). *See* Pet. ¶¶ 92–96. The record does not sufficiently support Steven's allegation that USCIS granted him deferred action to begin with,[4] but, even if it did, the *ICWC* court's decision to stay ICE policies does not entitle Steven to release or a bond hearing. *See Eliseo C.*, slip op. at 16–17 (explaining that, as an act of prosecutorial discretion, deferred action is a type of agency action to be "treated differently than other types of agency discretion" (quoting *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001))); *see also Jose Alberto C.D. v. Blanche*, No. 26-cv-3566 (KMM/LIB),

4 *See supra* note 2 and accompanying text.

2026 WL 2588362, at *5 (D. Minn. Sept. 2, 2026) ("[T]he Court finds that, at bottom, deferred action like that Jose C.D. invokes is an act of prosecutorial discretion that provides no basis for this Court to enjoin removal."); *id.* at 4 (noting "serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case" given that the INA bars such injunctions under 8 U.S.C. § 1252(f)(1)).

Steven's substantive due process claim fares no better. Where, as here, no fundamental right is implicated, "the [challenged] law must only be rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). Steven argues that the government lacks a legitimate interest in detaining him because he is neither a flight risk nor a danger to the community, in part because of "the government's inability to lawfully remove Steven given his deferred action." *See* Pet. ¶ 114. This argument is unavailing for two reasons. First, the cases discussed above with respect to Steven's APA claim explain why it is not the case that a grant of deferred action strips the government of its authority to remove a noncitizen. Second, Steven is detained pursuant to 8 U.S.C. § 1225(b)(2), and the government not only has a "legitimate interest in enforcing immigration laws," but it is also "well-established that the authority to detain noncitizens is necessarily attendant to the power to remove them." *Eliseo C.*, slip op. at 11 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *Demore*, 538 U.S. at 523; *Carlson v. Landon*, 342 U.S. 524, 538 (1952)).

Finally, Steven's Fourth Amendment claim based on his alleged warrantless arrest, *see* Pet. ¶¶ 116–25, is not supported by the record. Respondents issued a Form I-200 warrant for Steven's arrest on May 12, 2026, prior to arresting him at the Anoka County

Jail on May 14, 2026. ECF No. 8-4. Steven did not challenge the Form I-200 warrant or make further argument in support of his Fourth Amendment claim in his reply brief. *See* ECF No. 9. Steven's Fourth Amendment claim does not entitle him to a writ of habeas corpus.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT**:

1. Respondents' objections [ECF No. 12] are **SUSTAINED**;

2. Petitioner's objections [ECF No. 13] are **OVERRULED**;

3. The Report and Recommendation [ECF No. 11] is **REJECTED**; and

4. Petitioner Steven F.V.Z.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 8, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court